IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JAMES LYNN GARRETT and SHANNON MARIE GARRETT | ) ) ) | |
| **Plaintiffs,** | ) ) | |
| v. | ) ) ) | Case No. 07 C 6882 |
| | ) | Judge Shadur |
| THE ILLINOIS STATE TOLL HIGHWAY AUTHORITY, FREDDY DICKERSON, MARIO CALABRESE, PAUL EDWARD GONZALEZ, JOHN BENDA, DONALD J. McLENNAN, STEVEN T. MUSSER, and MICHAEL ZADEL | ) ) ) ) ) ) ) ) | Jury demanded |
| **Defendants** | ) | |

## AMENDED ANSWER TO COMPLAINT AT LAW

Now come the defendants, the ILLINOIS STATE TOLL HIGHWAY AUTHORITY, FREDDY DICKERSON, MARIO CALABRESE, PAUL EDWARD GONZALEZ, JOHN BENDA, DONALD J. McLENNAN, STEVEN T. MUSSER, and MICHAEL ZADEL, by their attorney, LISA MADIGAN, Attorney General of the State of Illinois, and LARRY R. WIKOFF and TIFFANY I. BOHN, Assistant Attorneys General, and for their Amended Answer to the Complaint at Law filed herein, state as follows:

## ANSWER COUNT I

1.      Jurisdiction.

Answer: Defendants admit that plaintiffs' Complaint at Law invokes jurisdiction under the provisions of Title 28 U.S. §1332 (a)(1).

2.      The Illinois Tollway is an agency of the State of Illinois, created by statute that consents to suit.

Answer: Defendants admit.

3.      The individual defendants were employees of the Illinois Tollway.

Answer: Defendants admit.

4.      Plaintiffs are citizens of Kansas.

Answer: Defendants are without knowledge or information sufficient to form a belief as to the alleged citizenship of the plaintiffs.

5.      Defendants are citizens of Illinois.

Answer: The individual defendants admit. The Illinois Tollway denies that it is a citizen, but admits that it is an agency of the State of Illinois.

6.      On December 5, 2005, I-294 was a toll highway running generally north and south at or near milepost 32.7, Cook County Illinois.

Answer:  Defendant's deny that I-294 goes over St. Charles Road.

7. Plaintiff James Lynn Garrett was a passenger operating a motor vehicle south in the second lane from the right shoulder

Answer:  Defendants deny that James Garrett was a passenger and aver that he was the driver then and there operating and controlling a semi-tractor trailer tandem. Defendants admit that the collision took place near milepost 32.7 but specifically deny that the collision took place at milepost 32.7. Defendants admit the remaining allegations set forth in paragraph 7.

8. The southbound roadway included four lanes for traffic, and left and right shoulders.

Answer:  Defendants admit.

9. The second lane from the right shoulder was blocked by the Tollway truck operated by Jimmi Marshall.

Answer:  Defendants deny that Marshall's truck was at milepost 32.7. but admit that it was near said mile marker. Defendants admit the remaining allegations set forth in paragraph 9.

10. The Tollway owned an additional truck operated by Paul Edward Gonzalez that was stopped on the lane next to the right shoulder to the rear of the truck operated by Jimmi Marshall.

Answer:  Defendants deny that Gonzalez' truck was at milepost 32.7 but admit that it was near said mile marker. Defendants deny that the Tollway truck operated by Paul Edward Gonzalez

was parked and left standing in a traffic lane next to the right shoulder. Defendants admit the remaining allegations set forth in paragraph 10.

11. The Tollway owned an additional truck operated by Freddy Dickerson which was stopped on the right shoulder to the rear of the truck operated by Paul Edward Gonzalez.

Answer: Defendants deny that Dickerson's truck was at milepost 32.7 but admit that it was near said mile marker. Defendants deny that the Tollway truck operated by Freddy Dickerson was parked and left standing on the right shoulder. Defendants deny that Dickerson's Tollway truck was within 25 feet of the rear of Gonzalez' Tollway truck. Other than as herein denied, Defendants admit the remaining allegations set forth in paragraph 11.

12. The Tollway had a truck operated by Mario Calabrese which could have been used to give warning of the presence of its other trucks.

Answer: Defendants admit that the Tollway had a truck operated by Mario Calabrese, but deny that the truck could have given warning of the existence of other trucks.

13. Defendants Benda, McLennan, Musser and Zadel were supervisors employed by the Tollway who had the duty to make sure that defendants Marshall, Dickerson, Calabrese and Gonzalez operated their trucks safely.

Answer: Defendants admit that the employment positions held by John Benda, Donald J. McLennan, Steven T. Musser, and Michael Zadel were, in general, supervisory to the employment positions held by Jimmi Marshall, Freddy Dickerson, Mario Calabrese, and Paul Edward Gonzalez. Defendants deny that at the time and place alleged John Benda, Donald J.

McLennan, Steven T. Musser or Michael Zadel were engaged in or charged with the duty to be engaged in the supervision of Jimmi Marshall, Freddy Dickerson, Mario Calabrese, and Paul Edward Gonzalez or the operation and control of their Tollway trucks.

14. The individual defendants each operated and controlled the Tollway trucks as servants and agents of the Tollway.

Answer: Defendants deny that John Benda, Donald J. McLennan, Steven T. Musser or Michael Zadel then and there operated and controlled the Tollway trucks involved in the accident. Other than as herein denied, Defendants admit the remaining allegations set forth in paragraph 14.

15. It was the duty of the defendants to exercise reasonable care.

Answer: Defendants deny that John Benda, Donald J. McLennan, Steven T. Musser and Michael Zadel then and there, owned, managed, maintained or controlled any of the Tollway trucks involved in the accident and deny that any of them then and there owed any duty arising out of the ownership, management, maintenance or control of said trucks. Defendants deny that any defendant other than the Tollway owned and maintained the trucks alleged. Other than as herein denied, Defendants admit the remaining allegations set forth in paragraph 15.

16. There existed a publication entitled "Manual on Uniform Traffic Control Devices for Streets and Highway" that set federal standards for double lane closures such as existed at the time of the collision.

Answer: Defendants admit the existence of the "Manual on Uniform Traffic Control Devices for Streets and Highways", 2003 Edition. Defendants deny that said manual provides "federal

5

standards" or any other standards for traffic control devices when there is a double lane closure of a highway such as existed at the time and place alleged.

17. There existed a publication entitled, "Manual on Uniform Traffic Control Devices", 2003 edition, that set Illinois standards for double lane closures such as existed at the time of the collision.

Answer: Defendants admit the existence of the Illinois Supplement to the Manual on Uniform, Traffic Control Devices. Defendants deny that said manual provides "Illinois standards" or any other standards for traffic control devices when there is a double lane closure of a highway such as existed at the time and place alleged.

18. There existed a publication entitled "Illinois Tollway Roadway Traffic Control and Communications Guidelines" which provided procedures to be followed for operations performed on the Tollway.

Answer: Defendants deny that the "Illinois Tollway Roadway Traffic Control and Communications Guidelines" provides procedures to be followed by maintenance personnel, and aver that it provides guidelines to be utilized during the course of construction, maintenance and utility operations performed on the Tollway. Other than as herein denied, Defendants admit the remaining allegations set forth in paragraph 18.

19. Defendants violated their duty of care.

Answer: Defendants deny paragraph 19 and sub-paragraphs a. through n. inclusive.

20. That as the direct and proximate result of defendants' breach of duty the vehicle operated by plaintiff struck the rear of the Tollway truck, thereby causing plaintiff's injuries and damages.

Answer:  Defendants admit that the motor vehicle operated by plaintiff James Lynn Garrett struck the rear of a Tollway truck thereby causing some of the injuries and damages that he may have suffered. Defendants deny the remaining allegations set forth in paragraph 20.

Wherefore, the defendants and each of them pray the Court to dismiss plaintiff's alleged cause of action with prejudice and for the entry of judgment in favor of the defendants and each of them and against the plaintiff, James Lynn Garrett, plus costs.

**AFFIRMATIVE DEFENSE COUNT I**

1. At the time and place alleged, plaintiff James Lynn Garrett failed to exercise ordinary care for his own safety in one or more of the following respects:

    a. Failed to keep his motor vehicle under proper control.

    b. In violation of 625 Ill. Comp. Stat. 5/11-601 failed to decrease his speed as was necessary to avoid colliding with the Tollway's maintenance vehicle.

    c. Failed to obey the official traffic-control devices such as warning lights and the directional arrows displayed on the Tollway's maintenance vehicles.

    d. Failed to observe and the Tollway overhead message board at milepost 35 and/or failed to modify the operation of his truck in accordance with the message displayed.

    e. Failed to maintain a reasonable and proper lookout for other vehicles, including the Tollway's maintenance vehicles, then and there upon the roadway.

   f.  Failed to yield the right of way to an authorized maintenance vehicle engaged in work upon the highway within a work zone in violation of 625 ILCS 5/11-908.

   g.  Failed to move over to the left lane to avoid entering a construction zone.

   h.  Otherwise operated his motor vehicle in a careless and negligent manner.

2. That as a direct and proximate result of one or more of the foregoing negligent and careless acts and/or omissions on the part of the plaintiff James Lynn Garrett, the motor vehicle operated by him collided with the Tollway maintenance vehicle operated by Jimmi Marshall and thereafter continued south and proceeded into and against the center concrete median wall, thereby causing any injuries or damages which plaintiff may have sustained.

3. On the date alleged in the Complaint, there was in full force and effect a certain statute of the State of Illinois known as 735 Ill. Comp. Stat. 5/2-1116 which provided as follows:

> *In all actions on account of bodily injury or death or physical damage to property, in which recovery is predicated upon fault, the contributory fault chargeable to the plaintiff shall be compared with the fault of all tortfeasors whose fault was a proximate cause of the death, injury , loss, or damage for which recovery is sought. The plaintiff shall be barred form recovering damages if the trier of fact finds that the contributory fault on the part of the plaintiff is more than 50% of the proximate cause of the injury or damage for which recovery in sought. The plaintiff shall not be barred form recovering damages if the trier of fact finds that the contributory fault on the part of the plaintiff is not more than 50% of the proximate cause of the injury or damage for which recovery is sought, but any economic or non-economic damages allowed shall be diminished in the proportion to the amount of fault attributable to the plaintiff.*

4 In the event that the defendants or any of them are found liable for damages allegedly sustained by plaintiff James Lynn Garrett, which liability is denied, the contributory fault of the plaintiff was in excess of 50% of the total fault which proximately caused his injuries and damages so as to act as a bar to the plaintiffs' recovery sought herein, or in the alternative, if

such contributory fault was 50% or less of the total fault, plaintiffs' recovery should be reduced in proportion to the amount of fault attributable to plaintiff James Lynn Garrett.

**WHEREFORE**, the Defendants and each of them pray that plaintiff be barred from recovery of any sum whatsoever as against the defendants and that judgment be entered in favor of the defendants and against the plaintiff James Lynn Garrett, or in the alternative that any judgment which may be entered against the defendants pursuant to plaintiffs' Complaint at Law, for which liability is expressly denied, be reduced in proportion to the amount of fault attributable to plaintiff Garrett.

## ADDITIONAL AFFIRMATIVE DEFENSE TO COUNT I

1.      On February 17, 2006, Marissa Lingafelter, individually and as administrator of the Estate of Lewis Lingafelter, Jr., deceased, filed lawsuit 2006 L 001810 in the Circuit Court of Cook County, Illinois against James Garrett, his employer Overnite Transportation Co., Inc. (n/k/a UPS Freight) ("Overnite"), and the Illinois State Toll Highway ("Tollway") seeking recovery for the wrongful death suffered by Lewis Lingafelter, Jr. as the result of the motor vehicle collision that occurred at or near M.P. 32.7 of southbound I-290, Cook County, Illinois on December 6, 2005 ("Lingafelter Lawsuit"). That the present lawsuit as captioned above, and the Lingafelter lawsuit arose out of the same occurrence.

2.      That Lewis Lingafelter, Jr. at the time and place alleged, was an employee of a Tollway contractor and was a pedestrian engaged in taking certain measurements of the roadway to the front of a Tollway maintenance vehicle that was stopped in the third lane from the left of four

9

southbound lanes of travel, while the third and fourth southbound lanes were then and there closed for regular traffic including the semi tractor-trailer operated by James Garrett.

3.      At the time and place alleged, James Garrett drove the front of his semi tractor-trailer into the rear of the Tollway maintenance truck stopped in the third lane from the left thereby pushing the Tollway truck forward into Lewis Lingafelter, Jr., and resulting in Lingafelter's death, and whatever injuries are claimed by James Garrett as plaintiff, herein.

4.      On April 17, 2006, the Tollway appeared in the Lingafelter Lawsuit and filed a counter-claim for contribution against Garrett and Overnite under the Illinois "Joint Tortfeasor Contribution Act", (740 Ill. Comp. Stat. 1000/.01 et. seq.), as well as a counterclaim for damage sustained to Tollway property as a result of the occurrence alleged.

5.      On September 26, 2007, Garrett and Overnite Transportation filed a counter-claim for contribution as against the Tollway in the Lingafelter Lawsuit.

6.      That on August 26, 2008, after trial by jury, the issues presented by the Linagfelter Lawsuit were decided upon jury verdict and judgment entered thereon. That said jury determined that as to the wrongful death of Lewis Lingafelter, Jr. that James Garrett and his employer Overnite bore 100 % of the fault and that the Tollway bore no fault. A copy of this verdict entitled "VERDICT FORM A" is attached and marked as Exhibit #1.

7.      Said jury further found that James Garrett's conduct to be the sole proximate cause of the accident. A copy of "SPECIAL INTERROGATORY NO. 1" is attached and marked as Exhibit #2.

8.      Said jury further found that the Tollway's conduct was not a proximate cause of the accident. A copy of "SPECIAL INTERROGATORY NO. 2" is attached and marked as Exhibit #3.

9.      That on August 26, 2008, pursuant to agreement of the parties the Court entered a verdict in favor of the Tollway and against James Garrett for the full amount claimed by the Tollway in its counter-claim for damage to its property, find that the Tollway bore no fault for such damage. A copy of "VERDICT FORM B" is attached and marked as Exhibit #4.

10.     That on August 26, 2008, pursuant to the aforesaid verdicts, the Circuit Court of Cook County, Illinois, Judge Donald J. Suriano entered judgments in the Lingafelter Lawsuit, copy attached and marked as Exhibit #5.

11.     That the verdict on the Tollway's counterclaim finding James Garrett to be 100% at fault for the Tollway's damages, as well as the verdict rendered in favor of the Estate of Lingafelter, the answers to the special interrogatories, and the judgments entered thereon in favor of the Tollway and the Estate of Lingafelter against plaintiff James Garrett preclude and estop James Garrett and Shannon Marie Garrett from re-litigation of the issues brought therein and going forward with the above-captioned lawsuit as they conclusively determine James Garrett to be

100% at fault for his own injuries, and that the Tollway bears no fault for the accident or any injuries sustained by James Garrett.

**WHEREFORE**, the defendants and each of them pray that plaintiff be barred from recovery of any sum whatsoever as against the defendants and that judgment be entered in favor of the defendants and against the plaintiffs.

## ANSWER COUNT II

1.-20.   Defendants hereby adopt and incorporate by reference paragraphs 1 though 20 of their Answer to Count I of the Complaint at Law as paragraphs 1 through 20 of their Answer to Count II of the Complaint at Law.

21.   At the time of the collision, Shannon Marie Garrett was married to James Lynn Garrett.

Answer:  Defendants are without knowledge or information sufficient to form a belief as to the alleged marital status of the plaintiffs.

22.   The defendants' negligence caused James Lynn Garrett's injuries and resulted in Shannon Marie Garrett's loss of support and society.

Answer:  Defendants deny.

Wherefore, the defendants and each of them pray the Court to dismiss plaintiff's alleged cause of action with prejudice and for the entry of judgment in favor or the defendants and each of them and against the plaintiff, Shannon Marie Garrett, plus costs.

## AFFIRMATIVE DEFENSE COUNT II

1.      Defendants hereby adopt and incorporate by reference paragraphs 1 through 3 of their Affirmative Defense to Count I as paragraphs 1 through 3 of their Affirmative Defense to Count II.

4       In the event that the defendants or any of them are found liable for damages allegedly sustained by plaintiff James Lynn Garret, which liability is denied, the contributory fault of James Lynn Garrett, was in excess of 50% of the total fault which proximately caused his injuries and damages so as to act as a bar to the recovery sought by plaintiff Shannon Marie Garrett sought herein, or in the alternative, if such contributory fault was 50% or less of the total fault, the recovery of Shannon Marie Garrett should be reduced in proportion to the amount of fault attributable to plaintiff James Lynn Garrett.

   **WHEREFORE**, the Defendants and each of them pray that plaintiff Shannon Marie Garrett be barred from recovery of any sum whatsoever as against the defendants and that judgment be entered in favor of the defendants and against the plaintiff, or in the alternative that any judgment which may be entered against the defendants pursuant to plaintiffs' Complaint at Law, for which liability is expressly denied , be reduced in proportion to the amount of fault attributable to plaintiff James Lynn Garrett.

## ADDITIONAL AFFIRMATIVE DEFENSE COUNT II

   Defendants hereby adopt and incorporate by reference paragraphs 1 through 11 of their Additional Affirmative Defense to Count I as paragraphs 1 through 11 of their Additional Affirmative Defense to Count II.

**WHEREFORE**, the Defendants and each of them pray that plaintiff Shannon Marie Garrett, be barred from recovery of any sum whatsoever as against the defendants and that judgment be entered in favor of the defendants and against the plaintiff.

| | |
|---|---|
| LISA MADIGAN,<br>Attorney General State of Illinois | Respectfully submitted,<br>Illinois State Toll Highway Authority |
| | /s Larry R. Wikoff<br>By: Larry R. Wikoff,<br>Assistant Attorney General<br>Attorney for Defendants |

Larry R. Wikoff
2700 Ogden Avenue
Downers Grove, IL 60515
(630) 241-6800 x 1505
ARDC No. 3013898